STATE OF NORTH CAROLINA v. BOBBY LESHAN BYRD

No. COA98-387

(Filed 2 February 1999)

**Firearms and Other Weapons— discharging firearm into occu-pied property—general intent crime—acting in concert—transferred intent**

The offense of discharging a firearm into occupied property is a general intent crime so that it was not error for the trial court to inform jurors that acting in concert and transferred intent instructions applied to that offense.

Appeal by defendant from judgments dated 28 July 1997 by Judge E. Lynn Johnson in Johnston County Superior Court. Heard in the Court of Appeals 5 January 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Elizabeth N. Strickland, for the State.*

*Paul Pooley, for defendant-appellant.*

GREENE, Judge.

Bobby L. Byrd (Defendant) appeals from his jury conviction of three counts of discharging a firearm into occupied property.

The State's evidence at trial tended to show that on 26 September 1996, Defendant, Marcus Stowe, Gregory Byrd, David Byrd, Stufaria Byrd, Walter Walker, and Jerry Spurgeon were at the residence of Lisa

STATE v. BYRD

[132 N.C. App. 220 (1999)]

Tunstall in Smithfield, North Carolina. Some of the people at the residence were drinking alcohol, some were watching television, and some were using cocaine. While there, an unidentified man came to converse with Marcus Stowe and then left in a black Ford Escort automobile. Shortly after the conversation, Defendant and the other six men left the house riding in a purple "low rider" Nissan truck and headed toward Blount Street in Smithfield to have a conversation with David Turrentine and Derrick Williams. En route, the purple low rider met the black Escort at a Community Action Center, and both vehicles proceeded to Blount Street. Upon their arrival on Blount Street, the unidentified man exited the Escort with a .9 millimeter rifle and started shooting at David Turrentine and Derrick Williams. Turrentine returned fire, and Defendant along with four of the other men, jumped out of the Nissan truck and began shooting at Turrentine.

Detectives from the Smithfield Police Department investigating the shooting testified that two automobiles and four residences on Blount Street were struck by bullets twenty-six times, six bullet casings were found outside of three residences, a total of ten bullet holes were discovered on the inside of three occupied residences, and two bullet casings were found inside of two occupied residences. The police officers also found a .9 millimeter rifle, a .22 millimeter handgun, and an AK-47 assault rifle in a trash can near Blount Street directly after the shooting.

Defendant testified that although he was at Lisa Tunstall's residence on 26 September 1996, he left with David Byrd, Carol Benton, Tina Byrd, Zandra Byrd, and two children in the black Escort to go to Blount Street to take Tina and Zandra Byrd to a friend's house. According to Defendant, once they arrived on Blount Street, he saw David Turrentine standing in his front yard pointing a gun at the Escort. Defendant further testified that once he heard gunshots, he exited the vehicle, ran between the houses on Blount Street, and then ran to a store where he called a taxicab to take him to his girlfriend's house. Defendant denies he either possessed or discharged a firearm on 26 September 1996.

After the defense rested, the trial court instructed the jury on all of the crimes for which Defendant was charged. Included were the following instructions on transferred intent and acting in concert: "[I]f the Defendant . . . intended to harm one person but actually harmed a different person, the legal effect would be the same as if he

STATE v. BYRD

[132 N.C. App. 220 (1999)]

had harmed the intended victim."; and "If two or more persons act together with a common purpose to commit discharging a firearm into occupied property and are actually or constructively present at the time the crime is committed, each of them is held responsible for the acts of the others." The trial court informed the jurors that because the discharging into occupied property charge was a general intent crime, the acting in concert and the transferred intent instructions applied to that offense.

The dispositive issue is whether the offense of discharging a firearm into occupied property is a specific intent crime.

Defendant argues the crime of discharging a firearm into occupied property is a specific intent crime and thus it was error to charge the jury on transferred intent[1] and acting in concert.[2] We disagree.

Discharging a firearm into occupied property is the intentional discharge of a firearm into an occupied building, with knowledge that such building is occupied or reasonable grounds to believe that the building might be occupied. *State v. Williams*, 284 N.C. 67, 73, 199 S.E.2d 409, 412 (1973). There is no requirement that the defendant have a specific intent to fire *into* the occupied building, only that he, alone or acting in concert with others, (1) intentionally discharged the firearm *at* the occupied building with the bullet(s) entering the occupied building, *State v. Wheeler*, 321 N.C. 725, 727, 365 S.E.2d 609, 610-11 (1988), or (2) intentionally discharged the firearm at a person with the bullet(s) entering an occupied building, *State v. Fletcher*, 125 N.C. App. 505, 513, 481 S.E.2d 418, 423, *disc. review denied*, 346 N.C. 285, 487 S.E.2d 560, *and cert. denied*, —— U.S. ——, 139 L. Ed. 2d 299 (1997). Thus, discharging a firearm into occupied property is a general intent crime, *State v. Jones*, 339 N.C. 114, 148, 451 S.E.2d 826, 844 (1994), *cert. denied*, 515 U.S. 1169, 132 L. Ed. 2d 873, *and reh'g denied*, 515 U.S. 1183, 132 L. Ed. 2d 913 (1995), and the instructions

---

1. Defendant asserts an alternative argument in support of his contention that the transferred intent instruction was error. He contends this instruction is proper only when an unintended victim suffers harm. Our Court has rejected that contention. *State v. Fletcher*, 125 N.C. App. 505, 512-13, 481 S.E.2d 418, 423, *disc. review denied*, 346 N.C. 285, 487 S.E.2d 560, *and cert. denied*, —— U.S. ——, 139 L. Ed. 2d 299 (1997).

2. The law applicable to this case is that "one may not be criminally responsible under the theory of acting in concert for a crime . . . which requires a specific intent, unless he is shown to have the requisite specific intent." *State v. Blankenship*, 337 N.C. 543, 558, 447 S.E.2d 727, 736 (1994), *overruled by State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44 (1997) (holding that *Blankenship* was effective from 29 September 1994 until the *Barnes'* certification date of 3 March 1997).

were not in error. *See State v. Pierce*, 346 N.C. 471, 493-94, 488 S.E.2d 576, 589-90 (1997) (finding no error in trial court's acting in concert jury instruction because defendant's charged offense was not a specific intent crime).

No error.

Judges JOHN and HUNTER concur.