TYSON, Judge.
Robert Allen Cox ("defendant") was convicted of discharging a weapon into occupied property. The trial court sentenced him to a presumptive term of twenty-nine to forty-four months imprisonment. Defendant filed timely notice of appeal. We find no error.
I. Background
The evidence at trial tended to show that on 27 June 2002, Lisa Threatte ("Threatte") drove her boyfriend, Travis Cox ("Cox"), to defendant's residence on Oregon Church Road in Salisbury. Threatte parked her 1997 Pontiac Sunbird next to defendant's vehicle in the driveway and waited in the car. Cox went inside to repay $70.00 of $300.00 he had borrowed from defendant. Defendant told Cox that partial payment "wasn't good enough, it wasn't allthe money." After arguing with defendant, Cox left the residence and walked toward Threatte's car. Defendant threw the money at Cox and followed him outside saying, "This isn't over. This isn't over," before re-entering the residence. Cox sat down in the passenger's seat next to Threatte and told her, "Let's go." Threatte looked up and saw defendant standing outside with a twenty-gauge shotgun. As Threatte drove away from defendant's residence, defendant fired the gun, shattering her car's rear window.
Threatte stopped her car at the intersection of Oregon Church Road and State Highway 152, while Cox called the police on his cellular phone. Defendant drove up to the intersection and apologized. Defendant stated the shotgun has a "hairy trigger" and that he had not meant to shoot at Threatte's car. Defendant asked Threatte and Cox not to call the police. When told that he was "going to jail," defendant drove away.
Defendant testified that he "planned on shooting the gun off in the air and scaring the living hell out of [Cox]," but did not intend to shoot Threatte's car. While conceding that he had cocked the gun's hammer with his thumb, he insisted the gun accidentally discharged while inadvertently pointed at the car. Defendant described the gun's trigger mechanism as "very delicate" and subject to firing easily once the hammer was cocked. He admitted that he fled to Ohio following the incident, because he "didn't want to go to jail," and that he cut the shotgun into pieces with a torch and disposed of it. Defendant further acknowledged that hearranged for his brother to give false testimony at his probable cause hearing to the effect that defendant had been in Ohio on 27 June 2002.
II. Issues
Defendant asserts the trial court erred in: (1) its jury instructions on accident; and (2) failing to sentence him in the mitigated range.
III. Instructions on Accident
Defendant claims the trial court committed "clear, plain and reversible error" in instructing the jury on the defense of accident. Defendant argues the court's references to an "injury to property" throughout its general instruction on accident, were prejudicial and warrants a new trial. The trial court instructed the jury:
Now, when evidence has been offered that tends to show that the alleged incident was accidental and you find that the injuries to the alleged victim's property was in fact an accident, then the defendant would not be guilty of any crime, even though his actions were responsible for the injury to the victim's - alleged victim's - property. Any injury to property is accidental if it is unintentional, occurs during the course of lawful conduct and does not involve culpable negligence. . . . When the defendant asserts that the injury to the victim's property was the result of an accident, he is in effect denying the existence of those facts which the State must prove beyond a reasonable doubt in order to convict him.
The burden of proof is on the State to prove those essential facts and, in so doing, to disprove the defendant's assertion that the incident was accidental. The State must satisfy you beyond a reasonable doubt that the victim's injury to the property was notaccidental before you may return a guilty verdict.
Defendant argues, "The critical inquiry in this case is whether he accidentally or intentionally pulled the trigger." Because injury to property is not an element of the offense of discharging a weapon into occupied property, defendant asserts that "[f]ocusing on some injury that is not an element of the offense was misleading, and, ultimately, confusing to the jury."
In evaluating the trial court's instructions to the jury, this Court must consider the entire charge, rather than individual words or phrases. "If the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for a reversal." State v. Terry, 337 N.C. 615, 623, 447 S.E.2d 720, 724 (1994) (quoting State v. Tilley, 292 N.C. 132, 145-46, 232 S.E.2d 433, 442-43 (1977) (citations omitted)).
A person is guilty of discharging a firearm into an occupied vehicle if he "intentionally, without legal justification or excuse, discharges a firearm into an occupied [vehicle] with knowledge that the [vehicle] is then occupied by one or more persons or when he has reasonable grounds to believe that the [vehicle] might be occupied by one or more persons." State v. Williams, 284 N.C. 67, 73, 199 S.E.2d 409, 412 (1973). "Discharging a firearm into a vehicle does not require that the State prove any specific intent but only that the defendant perform the act which is forbidden by statute. It is a general intent crime." State v. Jones, 339 N.C. 114, 148, 451 S.E.2d 826, 844(1994) (citing State v. Wheeler, 321 N.C. 725, 365 S.E.2d 609 (1988)), cert. denied, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995). The State was required to prove only that defendant either (1) intentionally fired the shotgun at Threatte's vehicle knowing it was occupied, "with the bullet(s) entering the occupied [vehicle]," or (2) intentionally fired the shotgun at Threatte or Cox, "with the bullet(s) entering the occupied [vehicle]." State v. Byrd, 132 N.C. App. 220, 222, 510 S.E.2d 410, 412 (citations omitted), disc. rev. denied, 350 N.C. 596, 537 S.E.2d 484 (1999).
A claim of accident is not an affirmative defense but simply "acts to negate the mens rea element of [the offense]." State v. Lytton, 319 N.C. 422, 425-26, 355 S.E.2d 485, 487 (1987). As applied in this case, an instruction requiring the State to prove beyond a reasonable doubt that defendant intentionally discharged a firearm into an occupied vehicle is "the functional equivalent" of an instruction on accident. State v. Riddick, 340 N.C. 338, 344, 457 S.E.2d 728, 732 (1995).
Having examined the challenged portion of the trial court's charge to the jury in context, we find no prejudicial error. Leaving aside the reference to the "injury to property," the court's general instruction on accident tracked the language N.C.P.I.-Crim. 307.11 (Replacement 2003), and was otherwise accurate in all respects. See State v. Turner, 330 N.C. 249, 261-62, 410 S.E.2d 847, 854 (1991). Following this preliminary instruction, the court charged the jury on the essential elements of the offense of discharging a firearm into occupied property, andinstructed the jury that the State must prove beyond a reasonable doubt:
First, that the defendant willfully or wantonly and intentionally discharged a firearm into a 1997 Pontiac automobile. . . .
Second, that the Pontiac was occupied at the time the firearm was discharged.
Third, that the defendant knew that the Pontiac automobile was occupied by one or more persons.
(Emphasis supplied). Finally, the trial court summarized the jury's mandate as follows:
If you find from the evidence beyond a reasonable doubt that . . . the defendant willfully or wantonly and intentionally discharged a firearm into a Pontiac automobile while it was occupied and the defendant knew it was occupied and that the discharge of the firearm into the Pontiac automobile was not accidental, it would be your duty to return a verdict of guilty. If you do not so find, or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty, or if you fail to find beyond a reasonable doubt that the discharge of the firearm into the automobile was not accidental, it would be your duty to return a verdict of not guilty.
(Emphasis supplied).
Taken as a whole, the charge clearly and unmistakably required the jury to find beyond a reasonable doubt that defendant intentionally fired his shotgun into Threatte's car, knowing it to be occupied and that the discharge was not accidental. See State v. Turner, 330 N.C. 249, 262, 410 S.E.2d 847, 854 (1991). This assignment of error is overruled.
IV. Mitigating Factors
Defendant also argues the trial court erred by failing to consider his evidence of mitigating factors at sentencing. When a defendant is sentenced within the applicable presumptive range, the court was under no obligation to make findings of aggravating and mitigating factors. See State v. Rich, 132 N.C. App. 440, 452-53, 512 S.E.2d 441, 450 (1999), aff'd, 351 N.C. 386, 527 S.E.2d 299 (2000); State v. Caldwell, 125 N.C. App. 161, 162, 479 S.E.2d 282, 283 (1997) ("[T]he legislature intended the trial court to take into account factors in aggravation and mitigation only when deviating from the presumptive range in sentencing."). The trial court did consider defendant's evidence, but deemed it insufficient to warrant a mitigated sentence. Defendant's admitted efforts to flee the State, to obstruct justice, and to knowingly endanger the lives of more than one person by use of a deadly weapon dispelled any mitigation. See N.C. Gen. Stat. § 15A-1340.16(d)(8) (2003).
The record on appeal contains an additional assignment of error not addressed by defendant in his brief to this Court. Defendant has abandoned this assignment of error. N.C.R. App. P. 28(b)(6) (2004).
IV. Conclusion
The trial court instruction required the jury to find beyond a reasonable doubt that defendant's discharge of the shotgun was not accidental. Defendant was sentenced within the presumptive range of the offense the jury convicted him of committing. We find no error in defendant's conviction or sentence.
No error. Judges WYNN and GEER concur.
Report per Rule 30(e).